UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GEORGE PHILIPS,

               Petitioner,

    -against-

WILLIAM BROWN,

               Respondent.
------------------------------------------------------------x
GEORGE PHILIPS,

               Petitioner,

    -against-

WILLIAM BROWN,

               Respondent.
------------------------------------------------------------x

**<u>MEMORANDUM AND ORDER</u>**

Case No. 08-CV-2625 (FB)

Case No. 08-CV-2626 (FB)

*Appearances:*
*For Petitioner:*
HERALD PRICE FAHRINGER, ESQ.
ERICA DUBNO, ESQ.
Fahringer & Dubno
120 East 56th Street
New York, NY 10022

*For Respondent:*
RICHARD BROWN, ESQ.
Queens County District Attorney
BY:    JOHN CASTELLANO, ESQ.
         KAREN WEISS, ESQ.
         Assistant District Attorneys
125-01 Queens Boulevard
Kew Gardens, NY 11415

KATHLEEN RICE, ESQ.
Nassau County District Attorney
BY:    JASON WEINSTEIN, ESQ.
         MARGARET MAINSUCH, ESQ.
         Assistant District Attorneys
262 Old Country Road
Mineola, New York 11501

**BLOCK, Senior District Judge:**

Petitioner George Philips ("Philips") seeks a writ of habeas corpus. In Case No. 08-CV-2625, he challenges his convictions on various sex offenses following a jury trial in Queens County ("the Queens case"); in Case No. 08-CV-2626, he challenges his convictions on various offenses upon his plea of guilty in Nassau County ("the Nassau case"). The two petitions turn on substantially the same issues, and the Court considers both in this memorandum and order. Both petitions are denied for the following reasons.

**I**

The familiarity of the parties with the underlying facts and procedural posture of the two cases is presumed. Only a brief summary, drawn from the state-court record, is necessary to put the discussion that follows in context.

**A.    Philips's Arrest**

In 1996 and 1997, several young women near the border of Queens and Nassau Counties were sexually assaulted in a similar way: a man wearing a mask would force the women into his car at gunpoint and force them to perform sex acts. The young women would then be told to pull their shirts over their heads, at which point they were released. As early as August 1996, Philips was identified as a suspect on the basis of a tip; he was surveilled (but not arrested) by Nassau and Queens police at various times during the following year.

On the evening of September 3, 1997, Stephanie Corr ("Corr") was attacked in Nassau County. An automobile approached her as she walked down a residential street; a masked man emerged, pushed her to the ground, and tried to spray something in her

mouth. Corr screamed; the driver retreated to his automobile and fled. Corr promptly reported the incident to the police, describing the automobile (a black Acura) and giving a partial plate number. The police immediately suspected Philips, who was pulled over a short time later in Queens County in his black Acura bearing a license plate that matched the partial plate number given by Corr. Corr later identified the automobile.

Philips was arrested and questioned for the remainder of September 3 and into the early hours of September 4 by Nassau County Detective Gary Tepperman ("Tepperman") and Queens County Detective Derek Partee ("Partee"); they questioned him about not only the assault on Corr, but several of the unsolved Queens and Nassau County assaults.

After waiving his *Miranda* rights, Philips made several inculpatory statements. In addition to describing in detail several sexual assaults he had committed, he acknowledged having a "problem" and blamed his ex-wife for leaving him sexually frustrated. He then wrote out and signed an apology. Philips also consented to a search of his automobile, which produced (among other evidence) a mask, starter's pistol, and DNA samples.

**B.    Procedural History**

*1.    Indictment and Suppression Hearings*

A Queens County grand jury indicted Philips on 24 counts of rape, sodomy, sexual abuse, and kidnapping.  a Nassau grand jury indicted him on 20 counts of sodomy,

sexual abuse, kidnapping, and criminal use of a firearm.[1]

In both counties, Philips moved to suppress all evidence obtained on September 3 and 4. He claimed that the police had had no probable cause to arrest him; that he had not consented to a search of his automobile (or that any such consent was invalid); and that the inculpatory statements given by him had been obtained in violation of his *Miranda* rights. Both motions were denied.[2]

## 2. *Queens County Trial*

Phillip's Queens County convictions resulted from a retrial, after the jury initially impaneled was unable to reach a verdict. Corr testified, as did several other young women who had been assaulted: April Murman ("Murman"), Karen Welby ("Welby"), Joanna Dispenza ("Dispenza"), Diane Semizian ("Semizian"), and Sabrina Craig ("Craig"). Each described a roughly similar assault: they were forced into an automobile by a man wearing a mask or scarf, sexually abused, and released. None of these witnesses, however,

---

[1]The full Queens indictment charged two counts of rape in the first degree, four counts of sodomy in the first degree, thirteen counts of sexual abuse in the first degree, and five counts of kidnaping in the second degree. *See* Fahringer Decl. (July 1, 2008), Ex. A at A5a-A11. The full Nassau indictment charged three counts of sodomy in the first degree, one count of attempted sodomy in the first degree, seven counts of sexual abuse in the first degree, three counts of kidnaping in the second degree, two counts of criminal use of a firearm in the first degree, one count of attempted assault in the third degree, and three other counts, the nature of which the Court cannot discern because a page has been inadvertently left out of Philips's exhibits. *See id.*, Ex. B at A8-A12 (missing page A7).

[2]Both counties conducted motions hearings lasting several days. Queens County reached its decision first; Philips then sought to preclude Nassau County from conducting a hearing at all, claiming that the Queens County result was the "law of the case." Over Philips's objection, the Nassau court conducted a full hearing (although it accepted Queens County's factual findings where relevant).

was able to identify Philips as her assailant.

Detectives Tepperman and Partee testified as to Philips's arrest and interrogation, including the inculpatory statements he had made. Several other police detectives testified about the evidence recovered in the search of Philips's automobile. Meghan Clement ("Clement") of LabCorp, which tested the DNA recovered from Philips's vehicle, opined that some of the DNA came from Dispenza and Craig.

In his defense, Philips called several police detectives: John Schaeffer and Vito Schiraldi testified that no fingerprints or hairs matching any Queens victim were recovered from Philips's automobile, while Scott Kovar testified that unidentified tire tracks near the location where Corr was assaulted did not match Philips's automobile. Philips also offered a partial alibi defense: His ex-fiancee testified that she was with Philips on the nights some of the young women were attacked; his father testified that he was with Philips every day between July 29 and August 12, 1999, a period that covers the date on which Dispenza was attacked. Philips did not testify.

The jury convicted Philips of (1) two counts of rape in the first degree, (2) one count of sodomy in the first degree, and (3) three counts of sexual abuse in the first degree. All of these counts related to the attacks on Dispenza and Craig; Philips was acquitted of the remaining counts.

On January 25, 2000, Philips was sentenced to a mix of consecutive and concurrent terms of imprisonment. In the aggregate, Philips will serve between 25 and 50 years in prison on the Queens County convictions.

### 3. Nassau County Guilty Plea

After he was sentenced in Queens County, Philips reached an agreement with the Nassau County prosecutors and entered an *Alford* plea to (1) one count of rape in the first degree, (2) two counts of sodomy in the first degree, and (3) one count of attempted sodomy in the first degree. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may [plead guilty] even if he is unwilling or unable to admit his participation in the acts constituting the crime.").[3]  Pursuant to the agreement, Philips was sentenced to an aggregate term of between 10 and 20 years' imprisonment on April 10, 2000.

The Nassau County sentence runs concurrently to the Queens County sentence. Thus, Philips is currently incarcerated pursuant to the convictions in both counties.

### C. Collateral Challenges

Before exercising his rights on direct appeal, Philips filed motions pursuant to § 440.10 of the New York Criminal Procedure Law in both counties.  Since the Court cannot discern from the voluminous *pro se* documents in the state court record which papers Phillips submitted in support of his § 440.10 motions, the Court cannot exactly determine what claims were raised in those collateral attacks.  Both motions were denied, however, and those decisions are in the record.

The Queens County opinion denying Philips's § 440.10 motion focuses

---

[3]The New York Court of Appeals reached the same conclusion five years earlier in *People v. Serrano*, 15 N.Y.2d 310 (1965).  As a result, an *Alford* plea is often called a *Serrano* or *Alford/Serrano* plea in New York.

principally on various challenges to the DNA evidence. *See* Fahringer Decl. (Dec. 31, 2008), Ex. X (Decision of Justice Jaime Rios dated Apr. 14, 2003). The Court cannot locate a record documenting that Philips sought leave to appeal the decision, but the parties agree that he did, and that leave was denied. *See* Weiss Decl. at ¶ 71 (Apr. 30, 2009) (noting that application was denied on September 18, 2003); Philips Mem. of Law at 104 ("Petitioner sought leave to appeal the decision[] to the Appellate Division.").

The Nassau County trial court focused principally on claimed violations of *Brady v. Maryland*, 373 U.S. 83 (1963). It held that all of the challenged evidence was (1) disclosed, (2) not *Brady* material, (3) not prejudicial, and/or (4) mooted by Philips's guilty plea. *See* Fahringer Decl. (Dec. 31, 2008), Ex. W (decision of Justice Donald E. Belfi dated Jan. 30, 2003). The Appellate Division granted leave to appeal, and affirmed on the fourth ground . *People v. Philips*, 817 N.Y.S.2d 373 (2d Dep't 2006), *leave to appeal denied*, 8 N.Y. 3d 949 (2007).

## D. Direct Appeal

Philips next sought relief via direct appeal. He challenged the Queens convictions on ten grounds:

(1)     that the prosecutor's summation deprived him of a fair trial;

(2)     that Corr's testimony was used solely to show criminal propensity;

(3)     that admission of the DNA evidence was error;

(4)     that the verdict was not supported by sufficient evidence;

(5)     that evidence seized during his arrest should have been suppressed;

(6)     that evidence regarding the voluntariness of his post-arrest statements

should have been admitted;

(7)     that evidence seized from his automobile should have been suppressed;

(8)     that he was deprived of his right to counsel;

(9)     that the judge improperly acted as prosecutor during the suppression hearing; and

(10)    that his sentence was excessive.

*See* Fahringer Decl. (July 1, 2008), Ex. G.  In addition, Philips filed a supplemental *pro se* brief reiterating counsel's arguments and raising additional claims of error.  *See id.*, Ex. L.

The Appellate Division affirmed.  *See People v. Philips*, 818 N.Y.S.2d 229 (2d Dep't 2006).  It held that Corr's testimony was properly admitted, that the evidence was sufficient, and that the sentence was not excessive.  It found the claim of prosecutorial misconduct unpreserved and, in any event, without merit.  It found, without reaching the merits in the alternative,  that the challenges to the DNA evidence and the trial court's conduct at the suppression hearing were unpreserved.  Finally, it rejected all remaining claims -- including those raised *pro se* -- as "without merit or based on matter dehors the record."  *Id.* at 230.

In his direct appeal of the Nassau County judgment, Philips raised six claims of error.  As in the Queens County appeal, he challenged the search of his automobile, the voluntariness of his post-arrest statements, the lack of counsel during police questioning and the trial judge's conduct during the suppression hearing.  In addition, he argued that he had been arrested without probable cause and that the trial court had improperly admitted identification evidence at trial.  *See* Fahringer Decl. (July 1, 2008), Ex. H.  Philips

filed a *pro se* brief raising additional points.  *See id.*, Ex. M.

A different panel of the Appellate Division affirmed.  *See People v. Philips*, 818 N.Y.S. 2d 227 (2d Dep't 2006).  It held that the arresting officer had probable cause; that the contentions regarding the search of his automobile and the voluntariness of his post-arrest statements were not preserved and, in any event, without merit; and that the contentions regarding the trial court's conduct during the suppression hearing and decision to admit identification evidence, were unpreserved.  The appellate court concluded by finding that all remaining contentions were "without merit, based on matter dehors the record, or were forfeited by the defendant's plea of guilty."  *Id.* at 228.

After unsuccessfully seeking leave to appeal both cases to the Court of Appeals, *see People v. Philips*, 8 N.Y.3d 949 (2007) (denying leave to appeal), 8 N.Y.3d 989 (2007) (denying reconsideration), Philips timely sought federal habeas relief.

## II

### A.    The Law of Habeas Corpus

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets out the parameters under which a federal court may grant a writ of habeas corpus to a state prisoner on account of a violation of federal law that occurred in a state court proceeding.  *See* 28 U.S.C. § 2254.  "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation and internal quotation marks omitted).

If a state court rules on the merits of a claim, that ruling can only be reversed in habeas proceedings if it was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States"; or (2)"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 402-11 (2000) (explaining deference required by AEDPA).

Habeas petitioners must also demonstrate that they have exhausted any remedies available in state court. 28 U.S.C. § 2254(b). If the state court holds that the petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although invocation of a well-established state-law rule will usually suffice to bar habeas review, there are "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

**B.     Philips's Claims**

The consolidated memorandum of law by counsel, submitted in support of both petitions, raises ten discrete claims:

> (1)-(3) Philips' arrest and a search of his car were not supported by probable cause, a warrant, or consent, in violation of the Fourth Amendment;
>
> (4)     DNA evidence was improperly admitted in the Queens County trial;
>
> (5)     both the Queens County prosecutor and the Nassau County prosecutor engaged in misconduct;
>
> (6)     the Queens County verdict was not supported by sufficient evidence

10

or, in the alternative, was against the weight of the evidence;

(7)     the Nassau County grand jury was tainted by improper evidence and improper refusals to consider favorable evidence;

(8)     the Appellate Division's refusal to grant leave to appeal the denial of Philips's § 440.10 motion with respect to Queens County was an abuse of discretion;

(9)     Philips's confrontation rights were violated when he was not able to call an "Officer White," allegedly the first police officer to interview Corr; and

(10)    the admission of uncharged crimes evidence (Corr's testimony) in Queens County violated his right to due process.

Mem. of Law (Dec. 30, 2008).[4]  The Court held oral argument on March 22, 2011, and accepted post-argument submissions from the parties.[5]

### 1-3.    *Fourth Amendment Challenges*

Philips believes that his rights under the Fourth Amendment were violated by his arrest and by the search of his automobile.  A federal court ordinarily has no power to redress Fourth Amendment violations in a habeas proceeding:  "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).

---

[4]Although Philips pursued a *Miranda* claim in state court, the Court construes his petition as having abandoned that claim since he has not specifically renewed it.

[5]The Court has also considered Philips's *pro se* memoranda; he amplifies the points of counsel but does not raise any new points.

The Second Circuit has developed "a litmus test to discern when a state prisoner has been denied an opportunity for full and fair litigation" of Fourth Amendment claims. *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830 (2d Cir. 1977)). That test permits review only in two instances: (1) "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations"; or (2) "the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Id.*

Philips concedes that New York's courts provide corrective procedures, but claims that those procedures suffered an "unconscionable breakdown." To meet that demanding standard, Philips must demonstrate that no court in New York conducted "a reasoned method of inquiry into relevant questions of fact and law." *Capellan*, 975 F.2d at 71 (quoting *Shaw v. Scully*, 654 F.Supp. 859, 864 (S.D.N.Y. 1987)).

Two separate justices of the New York Supreme Court conducted extensive proceedings on Philips's motions to suppress and issued reasoned written opinions rejecting his arguments.[6] Two panels of the Appellate Division considered and rejected Philips's arguments on direct appeal. While Philips protests that these decisions were incorrect, the relevant question is whether the state courts were so contemptuous of his Fourth Amendment rights as to demonstrate that they "were not responsible forums in

---

[6]Philips directs most of his challenge at the Queens County suppression hearing. His characterization of that hearing—as unconstitutionally "biased," "tainted," or "pro-prosecution"—is not supported by the record, which the Court has reviewed.

which to bring constitutional claims." *Capellan*, 975 F.2d at 71. That is plainly not the case. The Court therefore has no authority to address Philips's Fourth Amendment claims.

### 4. DNA Evidence

Philips challenges the admission of DNA evidence recovered from his automobile as violating his rights under the Due Process Clause and the Confrontation Clause. The DNA evidence was clearly important: Philips was convicted of charges supported by DNA evidence, and acquitted of all others. As noted, however, the Appellate Division concluded on direct review that claims regarding the DNA evidence were unpreserved. *See Philips*, 818 N.Y.S.2d at 230.[7]

The Court need not address Philips's argument that it should disregard the procedural bar as an "exorbitant" application of New York's preservation rules because his challenge to the DNA evidence fails on the merits. Phillips discusses at length compliance with testing protocols, chain of custody issues and other means of showing (and challenging) the reliability of DNA evidence before it is admitted into evidence. But the admissibility of evidence is generally an issue of state law and, therefore, not cognizable on habeas unless it also implicates a federal right. *See Estelle*, 502 U.S. at 72 ("Nor do our habeas powers allow us to reverse McGuire's conviction based on a belief that the trial judge incorrectly interpreted the California Evidence Code[.]"); *Dunnigan v. Keane*, 137 F.3d

---

[7]The Appellate Division made specific reference to "point three" of Philips's brief to that court, which specified the following errors with respect to the DNA evidence: (1) laboratory protocols were improperly precluded; (2) the DNA evidence was against the weight of the evidence; (3) Clement was not qualified to serve as an expert witness; and (4) the prosecution failed to establish a proper chain of custody. *See* Fahringer Decl. (July 1, 2008), Ex. G at 44 (Philips's brief to the Appellate Division).

117, 125 (1998) ("[N]ot all erroneous admissions of . . . evidence are errors of constitutional dimension.").

      As Philips correctly notes, the erroneous admission of evidence can violate due process if the error is "is so extremely unfair that [it] violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990) (citation and internal quotation marks omitted). Under AEDPA, however, habeas relief cannot be granted unless the due-process violation amounts to "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Although Phillips makes passing reference to his due-process rights, he does not explain what Supreme Court case clearly establishes that the state courts violated those rights.

      With respect to his Confrontation Clause claim, Phillips cites the Supreme Court's decision in *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), for the proposition that the prosecutor's failure to offer the DNA evidence through the lab employee who conducted the DNA analysis violated his right to confront the witnesses against him. Although the Second Circuit has not addressed the issue, the Court agrees with the First Circuit's recent holding that the testimonial nature of laboratory results was not clearly established until *Melendez-Diaz* itself was decided. *See Likely v. Ruane*, ___ F.3d ___, 2011 WL 1533444, at *2-*3 (1st Cir. Apr. 25, 2011). Accord Watson v. Artus, 2010 WL 5060861, at *14 (S.D.N.Y. July 22, 2010); Vega v. Walsh, No. 06-6492, 2010 WL 2265043, at *3 (E.D.N.Y. May 28, 2010). Since *Melendez-Diaz* postdates the state-court decisions here by several years, it cannot be said that the decisions were contrary to, or unreasonable applications of, clearly established federal law. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1399

(2011) ("State-court decisions are measured against this Court's precedents as of 'the time the state court renders its decision.'" (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003))).

At oral argument, Philips's counsel stressed that the lab that processed the DNA evidence is under investigation by the New York Inspector General for improper handling of evidence. The Court agreed to consider staying the proceedings pending the results of the investigation, but asked counsel to first ascertain whether the investigation would cover Philip's case. In his post-argument submission, counsel recounted his conversation with Philip Foglia, the deputy inspector general in charge of the investigation. According to Foglia, the investigation is not focused on any particular case, and, in any event, reaches back only to 2003. *See* Letter from Herald Fahringer (Apr. 29, 2011). Since the DNA evidence in Philip's case was processed in 1997, there is no reasonable chance that the investigation will yield any information relevant here; a stay would serve only to delay the proceedings.

### 5. *Prosecutorial Misconduct*

As presented in his counsel's memorandum of law, Philips's claim of prosecutorial misconduct is based on a number of allegedly improper comments by the Queens County prosecutor in his summation. As noted, the Appellate Division held on direct review that the claim was procedurally barred *and* without merit. The Appellate Division's invocation of the state-law bar on raising unpreserved issues precludes habeas relief, even though it "also ruled in the alternative on the merits." *Glenn v. Bartlett*, 98 F.3d

721, 724 (2d Cir. 1996) (citation and internal quotation marks omitted).[8]

Phillips's *pro se* submission alleges *Brady* violations, in particular the failure of the Nassau County prosecutor to turn over a 911 call by Gerald Lavin -- a retired police officer -- on Corrs's behalf. At oral argument, the issue arose whether Philips forfeited this claim by pleading guilty. In his post-argument submission, Philip's counsel argues that it was not because (1) he took an *Alford* plea and, therefore, did not admit factual guilt, and (2) his trial counsel asserted that Philips's right to appeal preserved all issues.

The Appellate Division addressed those argument in its review of the denial of Philip's § 440.10 motion. Applying well-established New York law, it held that Philip's guilty plea barred any *Brady* claims, notwithstanding the nature of the plea and trial counsel's assertion. *See Philips*, 817 N.Y.S.2d at 373-74; *see also People v. Thompson*, 571 N.Y.S.2d 553, 554 (2d Dep't 1991) ("[A] plea will not be vacated merely because the defendant was unwilling or unable to describe or admit to the underlying facts of the charged crime."); *People v. Mack*, 53 N.Y.2d 803, 806 (1981) ("A defendant cannot by a unilateral recital of an intention or desire to preserve a legal contention evade what would otherwise be the consequences of his guilty plea."). Since Philips has not cited any Supreme Court case holding that such an interpretation of the law of waiver violates federal law, the Second Department's disposition of his *Brady* claims does not provide a basis for habeas relief.

---

[8]In any event, the Court has reviewed the transcript of the closing argument, and cannot say that the Appellate Division's alternative ruling on the merits was contrary to, or an objectively unreasonable application of, clearly established federal law.

### 6. Evidentiary Challenges

Philips's claim that the Queens County verdict was legally insufficient is preserved for habeas review since the Appellate Division addressed it on the merits on direct review:

> Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence.

*Philips*, 818 N.Y.S.2d at 229. Philips must demonstrate that this decision violates *Jackson v. Virginia*: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319 (1979) (emphasis in original). A habeas petitioner "making such a challenge bears a very heavy burden," *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993), and Philips has not satisfied it. The DNA evidence and inculpatory statements were more than sufficient to convict.

As for Philips's claim that the verdict was against the weight of the evidence, that is not a constitutional claim. *Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("[I]t is well settled that upon *habeas corpus* the court will not weigh the evidence[.]" (citation and internal quotation marks omitted)).

### 7. *Nassau County Grand Jury*

Philips makes various challenges to the Nassau grand jury proceedings. *See* Mem. of Law at 92-99. On direct review, the Appellate Division summarily rejected this

claim as "without merit, based on matter dehors the record, or [] forfeited by [Philips's] plea of guilty." *Philips*, 818 N.Y.S.2d at 228. When a state court uses this phraseology, the claim is preserved for habeas review. *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000). The claim nevertheless fails because claims of grand jury error are not cognizable in habeas proceedings. *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (citing *United States v. Mechanik*, 475 U.S. 66, 70 (1986)).

### 8.   *Denial of Philips's Queens County § 440.10 Motion*

Philips claims that the Appellate Division's decision to deny leave to appeal the denial of his § 440.10 challenge to his Queens conviction, coupled with that same court's decision to grant leave to appeal the denial of his Nassau § 440.10 challenge, violated his right to due process. *See* Mem. of Law at 103-05. He cites no federal law for that principle, and federal courts consistently hold that state post-conviction collateral proceedings do not present constitutional questions. *See Diaz v. Greiner*, 110 F. Supp. 2d 225, 235-36 (S.D.N.Y. 2000) ("[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." (internal citations omitted)); *Sparman v. Edwards*, 26 F. Supp. 2d 450, 468 n.13 (E.D.N.Y. 1997) ("28 U.S.C. § 2254 only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding."); *Turner v. Sullivan*, 661 F. Supp. 535, 540 (E.D.N.Y. 1987) ("This complaint about compliance with state law[,]" including, *inter alia.*, § 440.10, "lacks the necessary constitutional predicate for federal habeas corpus review."); *see also Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) ("Unless state collateral review violates some independent constitutional right, such as the Equal

Protection Clause[,] . . . errors in state collateral review cannot form the basis for federal habeas corpus relief." (internal citations omitted)).

### 9. *Philips's Confrontation Rights*

Philips believes that he was unconstitutionally prevented from effectively impeaching Corr's testimony because he was unable to call an "Officer White," who allegedly took the initial police report from Corr. *See generally* Mem. of Law at 106-09. The Appellate Division has never opined upon this claim because Philips raised it only in passing, without specificity or explanation, deep within his *pro se* supplemental brief to the Appellate Division. *See* Fahringer Decl. (July 1, 2008), Ex. K at 121 (Philips's *pro se* supplemental brief dated Nov. 22, 2004).[9] This did not satisfy the exhaustion requirement; "[i]n order to have fairly presented [a] federal claim to the state courts the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court." *Daye v. Attorney Gen. of* N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (citing, *inter alia*, *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)). The subsequent elaboration Philips offered when seeking leave to appeal from the Court of Appeals did not exhaust it either. *St. Helen v. Senkowski*, 374 F.3d 181, 183 (2d Cir. 2004) ("[R]aising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Since Philips has exhausted his direct appeals in state court, this claim is now

---

[9] The relevant text reads: "The Appellant was deprived of his right to due process and a fair trial because the trial and hearing judge wrongfully precluded the testimony of police officers[,]" and "the trial judg[e] [denied] the right to confront the first responding officers to the Corr crime scene[.]" Fahringer Decl. (July 1, 2008), Ex. K at 121.

procedurally barred, and is therefore denied.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c) (barring state court review if claim could have been raised on direct appeal but was not); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (deeming claims exhausted where it would be "fruitless" for petitioners to seek state court review, citing § 440.10(2)(c)).[10]

### 10.    *Admission of Uncharged Crimes Evidence*

The Court construes Philips's petition as claiming that the admission of Corr's testimony violated his right to due process.  State court evidentiary rulings, even where erroneous, rarely present due process concerns; the errors must be "so pervasive as to have denied [the defendant] a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *see also Dowling v. United States*, 493 U.S. 342, 352 (1990) ("The question . . . [is] whether the introduction of [the] evidence is so extremely unfair that its admission violates fundamental conceptions of justice." (internal quotation omitted)).

The Appellate Division denied this claim, holding that Corr's testimony was properly admitted to establish Philips's modus operandi and as background information to complete the narrative of Philips's arrest, and "to explain why he confessed when he confessed." *Philips*, 818 N.Y.S.2d at 229 (citations omitted).  Philips fails to demonstrate that this determination was unreasonable.

---

[10] In any event, the record reflects that the trial judge rejected Philips's request to admit White's testimony on account of Philips's failure to confront Corr with the allegedly inconsistent statement to which White would have hypothetically testified.  Like many of Philips's other claims, this claim reduces to a challenge to a state evidentiary ruling—not a denial of a constitutional right.

**III**

Both of Philips's petitions are denied.  A certificate of appealability will not issue because Philips has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c).

**SO ORDERED.**

s/ Judge Frederic Block

_____

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
May 20, 2011